UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOHNNY TIPPINS,

          Plaintiff,

v.

UNKNOWN DANKURT, et al.,

          Defendants.
_____/

Case No. 1:22-cv-777

Hon. Hala Y. Jarbou

**OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*.[1] (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] In the Court's order granting Plaintiff leave to proceed *in forma pauperis*, the Court determined that although Plaintiff has had at least three cases dismissed on the grounds that they were frivolous, malicious, and/or failed to state a claim, *see, e.g.*, *Tippins v. Parish*, No. 1:19-cv-781 (W.D. Mich. Oct. 15, 2019); *Tippins v. NWI-1, Inc.*, No. 1:16-cv-10140 (E.D. Mich. Aug. 12, 2016); *Tippins v. Caruso*, No. 2:14-cv-10956 (E.D. Mich. Oct. 14, 2015), Plaintiff had sufficiently alleged that he was in imminent danger of serious physical injury, and as such, he was permitted to proceed *in forma pauperis* in this action. (ECF No. 4, PageID.96 n.1.)

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Registered Nurses Unknown Dankurt and Unknown Barclavich, as well as Correctional Officer Unknown Miston.

Plaintiff alleges that on August 20, 2022, he told Correctional Officer Davis (not a party) that he had discovered a lump on his right testicle. (ECF No. 1, PageID.3.) Davis contacted Defendant Dankurt, and Plaintiff was told to submit a medical kite and that he would be scheduled for an examination "soon." (*Id.*)

When Plaintiff saw Defendant Dankurt, Plaintiff indicated that he had been experiencing pain "for a few days." (*Id.*) Plaintiff avers that Defendant Dankurt told Davis to re-handcuff Plaintiff "instead from the front but the back because he claimed he felt threaten[ed]." (*Id.*) Defendant Dankurt had "no intentions" of examining Plaintiff, despite Plaintiff's complaints of pain in his back and abdominal area. (*Id.*) Plaintiff was given a urine container and sent back to his cell. (*Id.*)

Twenty minutes later, Defendant Dankurt came to Plaintiff's cell. (*Id.*) Plaintiff tried to hand him the urine container and asked if he would be examined regarding the lump. (*Id.*) Defendant Dankurt "just walked away and did not say anything." (*Id.*) Plaintiff avers that he was previously told by other healthcare providers that if he discovered a lump on or around his testicles to seek immediate medical attention. (*Id.*)

Later that day, Defendant Miston was conducting rounds, and Plaintiff asked to see a nurse regarding the lump. (*Id.*) Defendant Miston told Plaintiff that he had contacted the nurse, who would come for the urine container. (*Id.*) Defendant Barclavich came to Plaintiff's unit for the

container an hour later. (*Id.*) Plaintiff asked what the urine container had to do with the lump that was not examined. (*Id.*) Defendant Barclavich explained that it was "for an infection in [Plaintiff's] bladder." (*Id.*) Plaintiff told Defendant Barclavich that Defendant Dankurt had not examined the lump; Defendant Barclavich stated that Defendant Dankurt told him that Plaintiff had refused examination. (*Id.*) Plaintiff told him that was not true and asked for it to be examined. (*Id.*) Defendant Barclavich stated that he would examine the lump, but Defendant Miston interrupted and told Defendant Barclavich not to examine it. (*Id.*) Defendant Barclavich said "well this (urine sample) would be best for you." (*Id.*)

Plaintiff contends that Defendants conspired to violate his constitutional rights and deny him treatment for the lump. (*Id.*) He argues that it "may have spread[] to other lymph nodes in [his] abdomen and back area." (*Id.*) Plaintiff claims that the lump may be cancerous, and that MDOC employees are denying him treatment because Plaintiff filed lawsuits against them in the past. (*Id.*, PageID.3–4.) Plaintiff suggests that healthcare providers at ECF have "black coded" him from receiving healthcare because of those prior suits. (*Id.*, PageID.4.) He claims that the lump hurts when he touches it, and that it is "nearly half the size of [an] aspirin tablet." (*Id.*)

Plaintiff mentions other incidents in his complaint. For example, he asserts that he is currently in the Start Now Program at ECF and contends that that program is unconstitutional. (*Id.*) Plaintiff claims that he is in segregation and can only use the phone once per week. (*Id.*) Plaintiff also mentions that he previously filed a lawsuit (*Tippins v. Parish*, No. 1:19-cv-781 (W.D. Mich.)) regarding his failure to receive the results of a thyroid scan he received at Munson Hospital and that healthcare will not provide him treatment for his Graves disease without those results. (*Id.*, PageID.5.) Plaintiff claims that Defendant Dankurt's actions are similar to the actions taken by the provider at issue in that case, thereby "demonstrate[ing] retaliation for [a] prior lawsuit." (*Id.*)

3

Plaintiff, however, specifically states that this information is to provide context for his claims against the named Defendants. The Court, therefore, concludes that Plaintiff is not attempting to allege claims against other parties.

Based on the foregoing, Plaintiff asserts Eighth Amendment claims for denial of medical care, as well as a civil conspiracy claim, against Defendants. The Court has also liberally construed his complaint to assert First Amendment retaliation claims. Plaintiff seeks preliminary and permanent injunctive relief in the form of a transfer, as well as compensatory and punitive damages. (*Id.*, PageID.6.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Civil Conspiracy Under § 1983

Plaintiff contends that Defendants conspired to violate his constitutional rights and deny him treatment for the lump on his testicle. (ECF No. 1, PageID.3.)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff provides no allegations regarding any agreement among Defendants, beyond the fact that they work at ECF. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege an agreement among Defendants to violate his constitutional rights, Plaintiff fails to state a plausible claim of conspiracy.

## B. First Amendment Retaliation Claims

Plaintiff suggests that Defendants denied him medical care for the lump in retaliation for prior grievances and lawsuits Plaintiff has filed against ECF staff members. (ECF No. 1, PageID.3–4.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of

retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Prisoners cannot be subject to retaliation for filing lawsuits or nonfrivolous prison grievances. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, the denial of medical care amounts to adverse action. Nevertheless, Plaintiff merely alleges the ultimate fact of retaliation in this action. While Plaintiff asserts that Defendant Dankurt called him "shady" and talked to Correctional Officer Vogue (not a party) about lawsuits and grievances Plaintiff has filed, Plaintiff has not presented any facts from which the Court could infer that Defendants were aware of these grievances and lawsuits and denied him medical care for the lump in retaliation for his protected activity. Plaintiff's conclusory and speculative allegations clearly fail to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff's retaliation claims will, therefore, be dismissed.

### C. Eighth Amendment Denial of Medical Care Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison

authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be

8

consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

> mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at \*2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v.*

10

*Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In his complaint, Plaintiff contends that on August 20, 2022, he discovered a lump on his right testicle. (ECF No. 1, PageID.3.) Plaintiff saw Defendant Dankurt, who gave Plaintiff a container to collect a urine sample but did not manually examine the lump. (*Id.*) Later that day, Defendant Barclavich came to Plaintiff's cell to collect the urine container, and Plaintiff asked that he examine the lump. (*Id.*) Defendant Barclavich said that he would, but Defendant Miston told him not to. (*Id.*) Defendant Barclavich then said the urine sample "would be best" for Plaintiff. (*Id.*)

One day later, Plaintiff completed his complaint and mailed it to the Court.[2] (ECF No. 1, PageID.6.) Given this, Plaintiff essentially requests that the Court conclude, after one day, that Defendants violated his Eighth Amendment rights by not manually examining the lump. The Court, however, disagrees with Plaintiff's conclusory assessment of the situation.

Defendants clearly sought a urine sample from Plaintiff as an initial step in determining the cause of the lump and pain. Plaintiff makes the leap to suggest that he could have testicular cancer and believes that such a determination could have been made solely with a manual examination. While testicular growths and cysts can constitute a serious medical need, *see Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008), Plaintiff's complaint is devoid of facts from which the Court could infer that Defendants were deliberately indifferent to that medical need. Rather, Plaintiff simply disagrees with the diagnostic path decided upon by Defendants Dankurt and Barclavich; however, "a patient's disagreement with his physicians [or other medical providers]

---

[2] While Plaintiff is not required to plead exhaustion, the fact that Plaintiff filed the instant complaint one day after the incident in question indicates that he did not even attempt to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e.

11

over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)).

Plaintiff also appears to fault Defendant Miston, a non-medically trained prison staff member, for interfering with his medical treatment by telling Defendant Barclavich not to manually examine the lump. A non-medically trained staff member, however, is not deliberately indifferent when he defers to a "medical recommendation that he reasonably believes to be appropriate, even if in retrospect that recommendation was inappropriate." *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Stojcevski v. Macomb Cnty.*, 827 F. App'x 515, 522 (6th Cir. 2020) ("[A]n officer who seeks out the opinion of a doctor is generally entitled to rely on a reasonably specific medical opinion for a reasonable period of time after it is issued, absent circumstances such as the onset of new and alarming symptoms." (quoting *Barberick v. Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) (per curiam))). Here, Plaintiff's complaint makes clear that Defendant Miston was aware that Plaintiff was under the care of the medical department. Defendant Miston called the medical department on Plaintiff's behalf and was told that a nurse would come to collect Plaintiff's urine sample. (ECF No. 1, PageID.3.) Defendant Miston was entitled to rely upon the medical department's determination that a urine sample would be the first course of action in diagnosing Plaintiff's symptoms. Plaintiff, therefore, has failed to allege facts suggesting that Defendant Miston was deliberately indifferent to his medical needs.

Contrary to Plaintiff's assertions, his allegations show that Defendants were responsive to his medical needs and provided initial treatment. Plaintiff has failed to allege facts showing that

the named Defendants were deliberately indifferent or that his treatment was "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 605 (citation omitted). Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims.

### III.  Request for Preliminary Injunctive Relief

In his complaint, Plaintiff seeks preliminary relief in the form of an immediate transfer to another MDOC facility that would "immediately attend to [his] medical needs." (ECF No. 1, PageID.6.) The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits. *S. Glazer's Distribs. of Ohio L.L.C. v. Great Lake Brewing Co.*, 860 F.3d 844, 848 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1982)). As set forth herein, the Court concludes that the complaint is properly dismissed. Therefore, the Court will deny Plaintiff's request for a preliminary injunction (ECF No. 1, PageID.6) as moot. *See Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020) ("[A] court must not issue a preliminary injunction where the movant presents no likelihood of merits success.").

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny as moot Plaintiff's request for preliminary injunctive relief. (ECF No. 1, PageID.6.)

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will

assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: September 21, 2022          /s/ Hala Y. Jarbou
                                   HALA Y. JARBOU
                                   CHIEF UNITED STATES DISTRICT JUDGE